IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| DOROTHY HALL, | : | |
|     Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | **No. 3:13-CV-137 (CAR)** |
| FRANKLIN COUNTY, GEORGIA; | : | |
| EDDY FOWLER in his individual | : | |
| capacity; and KEN EAVENSON in | : | |
| his individual capacity, | : | |
|     Defendants. | : | |
| _____ | : | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Presently before the Court are Defendants Franklin County and Ken Eavenson's

Joint Motion for Summary Judgment [Doc. 25] and Defendant Eddy Fowler's Motion

for Summary Judgement [Doc. 27].[1] Plaintiff Dorothy Hall ("Plaintiff") brings claims

against Defendant Fowler under 42 U.S.C. § 1983, alleging that she was subjected to

sexual harassment creating a hostile work environment in violation of the Equal

Protection Clause of the Fourteenth Amendment. Additionally, Plaintiff alleges claims

---

[1] Plaintiff has also filed a Consent Motion to Amend the Complaint [Doc. 31] withdrawing her
claims against Defendants under the Georgia Constitution Art. I, Sec. I, Para. II, Art. I, Sec. I,
Para. V; violation of the First Amendment under 42 U.S.C. § 1983; Failure to Maintain a Safe
Workplace under O.C.G.A. § 34-2-10; Intentional Infliction of Emotional Distress claim against
Defendant Franklin County; Assault and Battery claim against Defendant Fowler. Defendants
do not oppose this Motion. Therefore, pursuant to Fed. R. Civ. P. 15(a)(2), the Court **GRANTS**
Plaintiff's Motion to Amend [Doc. 31], and these claims are hereby **DISMISSED**.

of sexual harassment and retaliation against Defendant Franklin County[2] (or "the County") in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").[3]

Plaintiff also brings various state law claims including: intentional infliction of emotional distress against Defendants Fowler and Eavenson; assault and battery claim against Defendant Fowler; and a claim of retaliation under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4, against Defendants Franklin County and Eavenson, and seeks punitive damages under O.C.G.A. § 51-12-5.1. The parties have filed briefs and their Motions are now ripe for ruling.

## BACKGROUND

Plaintiff was employed by the Franklin County Probate Court from January 23, 2008, until her termination on December 31, 2012.[4] Defendant Fowler served as the Franklin County Probate Judge beginning in 1996 until his resignation in August 2012.[5] The Probate Court is responsible for probating estates; handling guardianships; issuing birth certificates, death certificates, marriage licenses, and firearms permits; handling

---

[2] Plaintiff concedes she has not asserted any federal claims against Defendant Eavenson in his individual capacity under Title VII or under § 1983 in violation of the Fourteenth Amendment. *See* Pl. Resp. to Defs' MSJ, Doc. 32 at 9.

[3] 42 U.S.C. § 2000-e-2(a)(1).

[4] Hall Dep., Doc. 25-3 at 29-30.

[5] Fowler Dep., Doc. 27-2 at 13-18.

elections; and adjudicating traffic and minor criminal offenses.[6] Other than the Probate Judge, only three people work for the Probate Court.[7]

Defendant Fowler, County Manager Billy Morse, County Attorney and interim Probate Judge Dale "Bubba" Samuels, and County Human Resources person Elaine Evans all believed that Probate Court employees were County employees.[8] Defendant Franklin County was responsible for paying the salaries of Probate Court employees.[9] Although the Probate Judge could set the salaries for his employees, he had to justify those amounts to the County.[10] For budgetary reasons, the County instructed Defendant Fowler that his employees could not work overtime.[11] When County employees received a raise, Probate Court employees did as well.[12] Probate Court employees received the same benefits and days off as other County employees.[13]

Probate Court employees had to go through the hiring process of Defendant Franklin County's Human Resources office.[14] The employees of the Probate Court also are bound by the County's personnel policies and were required to sign an agreement acknowledging that fact, including the stipulation that no manager or representative

---

[6] Fowler Dep., Doc. 27-2 at 21-22.
[7] Hall Dep., Doc. 25-3 at 75-76.
[8] Doc. 32-2; Morse Dep., Doc. 25-5 at 11; Samuels Dep., Doc. 25-7 at 45; Evans Dep., Doc. 25-8 at 114.
[9] Evans Dep., Doc. 25-8 at 60.
[10] Fowler Dep., Doc. 27-2 at 140-141; Evans Dep., 25-8 at 60.
[11] Fowler Dep., Doc. 27-2 at 42.
[12] Fowler Dep., Doc. 27-2 at 140-141; Evans Dep., 25-8 at 60.
[13] Evans Dep., Doc. 25-8 at 60.
[14] Samuels Dep., Doc. 25-7 at 45.

could enter into any agreement contrary to the Franklin County personnel policies without written approval from the Board of Commissioners.[15] Employees frequently transfer between the Probate Court and other County positions without submitting new applications.[16] When Defendant Fowler sought to fire an employee in 2011, he consulted with County Manager Morse to determine whether he had enough evidence to justify the termination.[17]

Defendant Fowler hired Plaintiff to a temporary position in January 2008 to fill a vacancy while another employee, Tonya Yearwood, was on maternity leave.[18] Plaintiff later became a full-time Probate Court employee.[19]  One of her primary responsibilities involved assisting Defendant Fowler with Traffic Court.[20]

1.  <u>The Incident</u>

On August 16, 2012, while Plaintiff was sitting next to Defendant Fowler in court, he reached under her dress and rubbed his hand on her inner thigh.[21] He whispered to her that her dresses turned him on and made him want her.[22] Plaintiff left the courtroom in shock, became ill, but returned to her duties.[23] Previous to the incident,

---

[15] Samuels Dep., Doc. 25-7 at 49-51; Doc. 32-5.
[16] Evans Dep., Doc. 25-8 at 46-49.
[17] Fowler Dep., Doc. 27-2 at 37-38; Samuels Dep., Doc. 25-7 at 45.
[18] Hall Dep., Doc. 25-3 at 29.
[19] Hall Dep., Doc. 25-3 at 31.
[20] Hall Dep., Doc. 25-3 at 71-74.
[21] Hall Dep., Doc. 25-3 at 94-95.
[22] Hall Dep., Doc. 25-3 at 95.
[23] *Id*. at 95.

Plaintiff and Defendant Fowler had a close relationship, and she considered him a "father figure."[24] Plaintiff later sought advice from a friend in the Sheriff's Department, who reported the incident.[25]

Plaintiff returned to work the following Monday, August 20th.[26] That day, Defendant Fowler spoke to Plaintiff about the incident, a conversation that Plaintiff secretly recorded and turned in to the GBI.[27] The next day, Defendant Fowler was arrested for sexual battery.[28]

Upon learning of the incident, County Manager Billy Morse opened an investigation and placed Plaintiff on paid leave.[29] Afterward, County Manager Morse forced Defendant Fowler to resign and appointed County Attorney Bubba Samuels as interim Associate Probate Judge.[30] Defendant Fowler was indicted for sexual battery, but the indictment was subsequently dismissed due to the District Attorney's failure to provide Defendant Fowler a copy of the indictment at least fifteen days prior to the Grand Jury hearing.[31]

In the aftermath of the incident, Defendant Fowler's attorney Daniel Moore attempted to speak to Plaintiff at the Probate Court on multiple occasions to convince

---

[24] Hall Dep., Doc. 25-3 at 165; Pl. Ex. 26, Doc. 32-10 at 7.
[25] Hall Dep., Doc. 25-3 at 59-60.
[26] *Id*. at 182.
[27] Hall Dep., Doc. 25-3 at 183-188; Fowler Dep., Doc. 27-2 at 87-92.
[28] Doc. 32-14 at 30-31.
[29] Morse Dep., Doc. 25-5 at 19, 60.
[30] Fowler Dep., Doc. 27-2 at 63.
[31] Doc. 32-16 at 1-2.

her not to pursue claims against Defendant Fowler, prompting Plaintiff to complain to Judge Samuels.[32] Sheriff Steve Thomas likewise attempted to dissuade Plaintiff from suing Defendant Fowler.[33]

### 2. Post-Incident and Plaintiff's Termination

On August 21, 2012, Defendant Eavenson was elected as the new Probate Judge and would take office on January 1, 2013.[34] In late October 2012, Defendant Eavenson assured Plaintiff that she would have a job once he assumed office.[35] However, on November 13, 2012, Defendant Eavenson informed Plaintiff that he would not even consider her for a position in January.[36] In making his decision, Defendant Eavenson cited his impressions of Plaintiff's reputation, as well as information he learned after his assurance to her that she would have a job; however, he did not discuss his reasons with Plaintiff.

In December, Plaintiff received a letter from Defendant Eavenson informing her that "Current Judge did not seek re-lection [sic]. New judge did not offer position."[37] Her termination was effective December 31, 2012.[38] Although County Manager Morse had the discretion to transfer Plaintiff to another position within the County, he did not

---

[32] Doc. 32-10 at 8-9.
[33] Doc. 32-10 at 9-10.
[34] Eavenson Dep., Doc. 25-4 at 138.
[35] Doc. 32-10 at 10.
[36] Doc. 32-10 at 10.
[37] Doc. 32-7.
[38] Doc. 32-21.

do so.[39] Plaintiff filed her EEOC charge and received her right to sue, and on December

6, 2013, Plaintiff filed the instant action.[40]

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must

be granted "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."[41] A genuine issue of

material fact only exists when "there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party."[42] Thus, summary judgment must be

granted if there is insufficient evidence for a reasonable jury to return a verdict for the

nonmoving party or, in other words, if reasonable minds could not differ as to the

verdict.[43] When ruling on a motion for summary judgment, the court must view the

facts in the light most favorable to the party opposing the motion.[44]

The moving party "always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of

---

[39] Morse Dep., Doc. 25-5 at 46-48.

[40] Doc. 1 & 6.

[41] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[43] *See id.* at 249-52.

[44] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

material fact" and that entitle it to a judgment as a matter of law.[45]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[46]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[47]

## DISCUSSION

### I.    § 1983 claim

Plaintiff asserts that Defendant Fowler subjected her to sexual harassment, creating a hostile work environment in violation of the Equal Protection Clause of the Fourteenth Amendment, actionable through 42 U.S.C. § 1983.   A hostile work environment claim is "established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[48]   The same five elements necessary to establish an actionable hostile

---

[45] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

[46] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.

[47] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

[48] *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (international quotation marks omitted) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

work environment claim based on sexual harassment under Title VII are the same to make out a claim under § 1983.[49]

For Plaintiff to recover on her hostile work environment claim, she must prove: (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristics; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory and abusive working environment; and (5) a basis for holding the employer liable under either a theory of vicarious or direct liability.[50] Defendant Fowler asserts Plaintiff has failed to show that his conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment.

"Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component."[51] That is, the employee must "subjectively perceive" the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable.[52] The environment must be one that "a reasonable person would find hostile or abusive" and that "the victim…

---

[49] *See* 42 U.S.C.2000e–2 *et seq.*; *Busby v. City of Orlando, Fla.*, 931 F.2d 764, 777 (11th Cir. 1991); *Cross v. State of Ala., State Dep't of Mental Health and Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995).

[50] *Id.*

[51] *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (citing *Harris*, 510 U.S. at 21–22).

[52] *Id.*

subjectively perceive[s]…to be abusive."[53] Furthermore, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"[54]

Here, it is clear Plaintiff subjectively believed Defendant Fowler's actions were sufficiently severe to alter the terms of her employment. Therefore, Plaintiff's claim hinges on the objective severity of the alleged incident.

The objective component of this analysis is considered fact-intensive, and the Supreme Court has identified the following four factors that should be considered in determining whether the harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.[55] Moreover, courts are instructed to examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment.[56]

---

[53] *Id.*

[54] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 23).

[55] *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (citing *Harris*, 510 U.S. at 23).

[56]*Harris*, 510 U.S. at 23 (explaining that "[w]e directed courts to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances'").

After examining the four factors set forth above, the Court finds Plaintiff did not endure conduct sufficiently severe or pervasive such that a reasonable person in her position would find Defendant Fowler's conduct sufficiently severe or pervasive to alter the terms or conditions of her employment.

Plaintiff does not satisfy the first factor because the allegedly harassing conduct was not frequent: there was only one incident.  As to the second factor, Plaintiff has failed to establish "a workplace that is permeated with discriminatory intimidation, ridicule and insult."[57] Plaintiff relies on the single isolated incident with Defendant Fowler to show severity; however, the Supreme Court has noted that "isolated incidents (unless extremely serious) will <u>not</u> amount to discriminatory changes in the 'terms and conditions of employment.'"[58]

There is no clear precedent in this Circuit as to what constitutes an isolated incident that would sufficiently rise to the level of "extremely serious" as to meet the severity standard.[59] However, after comparing Plaintiff's allegations to single-incident

---

[57] *Miller*, 277 F.3d at 1267-77.

[58] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (emphasis added).

[59] The Court notes, however, that there is a line of cases that show that even multiple incidents of sexually charged conduct my not be sufficiently severe. *See, e.g., Guthrie v. Waffle House, Inc.,* 460 F. App'x 803, 808 (11th Cir. 2012) (where plaintiff was "grabbed" on the butt two to five times, and made sexually explicit comments to her on several occasions—not sufficiently severe); *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 584–85 (11th Cir. 2000), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) (finding actions not severe when supervisor touched employee's jewelry and touched her knee and raised her dress hem; called her at home two or three times per week and on weekends asking her about her boyfriend, suggesting that he would like to come over and spend the night); *Dar Dar v. Associated Outdoor Club, Inc.,* 248 F. App'x 82, 85 (11th Cir. 2007) (two sexually inappropriate

cases throughout the circuits, the Court is persuaded that the incident at issue is indeed boorish, but not sufficiently severe. For example, courts have found isolated incidents sufficiently severe where a plaintiff was called a "bitch," threatened and pinned against a wall and injured to such an extent to require surgery[60]; or where the plaintiff was tricked into observing defendant masturbate[61]; or where defendant grabbed plaintiff started kissing her, forcing his tongue in her mouth, and his hand down the Plaintiff's blouse far enough to grope her breasts.[62] On the other hand, courts have also found isolated incidents insufficiently severe, where plaintiff's supervisor "privately met with [her], sat down next to [her] and placed his arm around her in an unwelcomed sexual manner"[63]; or where defendant forced his hand underneath plaintiff's sweater and bra touching her breast;[64] or where defendant grabbed plaintiff's left breast and said that

---

comments and two incidents of intentional buttocks touching—not severe); *Mitchell v. Pope*, 189 F. App'x 911, n. 3 (11th Cir. 2006) (finding actions not sufficiently severe where comments were said to plaintiff such as she could "just walk into the room and [he would get] an erection"; attempted to look down her shirt, rubbed up against her, chased her around the office and once picked her up, opened the women's bathroom door and turned the lights off when he knew plaintiff was inside; and asked plaintiff to go to a hotel hot tub with him when they were at a conference and called her a "frigid bitch" when she refused); *Mendoza*, 195 F.3d at 1246-47 (detailing cases from other circuits delineating minimum level of severity or pervasiveness necessary for harassing conduct to constitute discrimination).

[60] *Smith v. Sheahan*, 189 F.3d 529, 531 (7th Cir. 1999).

[61] *U.S. E.E.O.C. v. Dillard's, Inc.*, No. 607-CV-1496-ORL-19GJ, 2009 WL 789976, at *8 (M.D. Fla. Mar. 23, 2009).

[62] *Fall v. Indiana Univ. Bd. of Trustees*, 12 F. Supp. 2d 870, 873 (N.D. Ind. 1998).

[63] *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 397 (11th Cir. 2012).

[64] *Brooks v. City of San Mateo*, 229 F.3d 917, 921 (9th Cir. 2000).

"the baby gave you big juicy tits and a big ass."[65]  The Court finds Plaintiff's allegation of an inappropriate touching and sexual comment more akin to the later line of cases, and thus insufficiently severe.

The Court recognizes Defendant's conduct satisfies the third factor: the incident was more than a mere utterance. Defendant Fowler's touching and comments caused Plaintiff to become physically ill, and she claimed she was "fearful" of interacting with Defendant Fowler on Monday.

However, as to the fourth factor, Plaintiff cannot show that her sickness or fear unreasonably interfered with her job performance. Plaintiff claims that her work increased because her co-worker resigned, and the interim probate judge only worked part-time. She also points out that Defendant Fowler's attorney came to her at work and asked her to drop the charges, and the Deputy Sheriff attempted to dissuade her from pressing charges against Defendant Fowler. Finally, she claims she had difficulty focusing and was diagnosed with Post Traumatic Stress Disorder (PTSD). However, Plaintiff returned to her work duties after the incident on Thursday and attended hearings at the court. Although she was seen by her coworkers to be crying at her desk, she in fact worked that Friday and Monday. She reported the incident to the Franklin County Sheriff's Department, Defendant Fowler was arrested on Tuesday, and he was forced to resign from his office later that week. Plaintiff only worked with Defendant

---

[65] *Demmons v. Fulton Cnty.*, No. 1:09-CV-2312-TWT-WEJ, 2010 WL 3418325, at *7 (N.D. Ga. Aug. 2, 2010).

Fowler for one day after the incident, and she never testified that her "fear" of interacting with Defendant Fowler kept her from performing her work duties on that day, or any day thereafter.[66]

Therefore, in viewing the facts in the light most favorable to Plaintiff, Defendant Fowler's actions and comments were certainly inappropriate, but the Court finds them insufficient to constitute objectively severe or pervasive behavior that unreasonably altered the terms and conditions of her employment to constitute a violation of the Fourteenth Amendment.

## II.    Title VII Claims

Plaintiff also claims Defendant Franklin County subjected her to sexual harassment creating a hostile work environment and retaliated against her in violation of Title VII.

Title VII makes it unlawful for an employer to "fail or refuse to hire or [] discharge any individual, or otherwise [] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]"[67] A plaintiff may establish sexual harassment in "violation of Title VII by proving that discrimination based on sex has created a hostile or abusive

---

[66] *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008) (finding that although the plaintiff alleged "that she was upset" by the conduct, she had not demonstrated that the alleged environment interfered with her job performance).
[67] 42 U.S.C. § 2000e-2(a)(1).

work environment."[68] Likewise, Title VII prohibits an employer from retaliating against an employee who has opposed any unlawful employment practice or participated in an investigation, proceeding, or hearing pertaining thereto.[69]

Before the Court can address the merits of Plaintiff's Title VII claims, the Court must first answer the threshold jurisdictional question of whether Defendant Franklin County was Plaintiff's "employer" as defined under Title VII. Title VII allows a plaintiff to seek relief <u>only</u> against her employer.[70]

A. <u>Employer Issue</u>

Under Title VII, an "employer" includes a government agency "engaged in an industry affecting commerce[,] who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."[71] Consequently, a plaintiff must establish that her "employer" had fifteen or more employees for the statutory period. In the present case, Plaintiff claims that Defendant Franklin County was her employer, and thus can be held liable for sexual harassment and retaliation under Title VII through its agents, Defendant Fowler and Defendant Eavenson respectively. However, Defendant Franklin

---

[68] *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).

[69] 42 U.S.C. § 2000e-3(a).

[70] *Rioux v. City of Atlanta, Georgia*, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008) (quoting *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995)).

[71] 42 U.S.C. § 2000e(b).

County contends the Probate Court is a separate entity from the County, and Plaintiff's employer was the Probate Court.

The Eleventh Circuit identifies three circumstances in which multiple local or state governmental entities may be aggregated for purposes of reaching the fifteen-employee threshold: the "single employer" test, the "joint employer" test, and the "agency" test.[72] Here, Plaintiff seeks to aggregate Defendant Franklin County and its Probate Court using the "single employer" test, which requires that the two entities be "highly integrated with respect to ownership and operations."[73]

Pursuant to the "single employer" test, the Court must "begin with the presumption that governmental subdivisions denominated as separate and distinct under state law should not be aggregated for purposes of Title VII."[74] A plaintiff may rebut the presumption of distinctness in two ways. First, if "a state's purpose in creating or maintaining nominally separate entities was to evade the reach of federal employment discrimination laws," the entities may be aggregated.[75] Second, even in the absence of intentional evasion, a plaintiff may seek to aggregate separate governmental entities as a single employer "where other factors so plainly indicate integration that

---

[72] *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999).

[73] *Id.* (internal quotations omitted).

[74] *Id.* at 1345. This presumption arises from the dual concerns of comity and federalism, which require federal courts to "accord substantial deference to a state lawmaking body's determination of whether two or more governmental entities are separate and distinct." *Id.* at 1344.

[75] *Id.*

they clearly outweigh the presumption that the entities are distinct."[76] Here, lacking evidence of evasion, Plaintiff relies on the second method of rebutting the presumption.

To survive summary judgment using this method, Plaintiff must provide evidence from which the finder of fact "reasonably could conclude the plaintiff has *clearly* overcome the presumption" of distinctness.[77] This heavy burden acts as "a thumb on the scale" and can thus be decisive.[78]

Here, as Defendant Franklin County argues, the presumption of distinctness applies.[79] Under Georgia law, "[o]rdinarily, employees of constitutionally elected officers of a county are considered employees of the elected officer and not employees of the county, as represented by the local governing authority."[80] In Georgia, the Judge of the Probate Court is a constitutionally elected officer.[81] Because Defendant Franklin County and its Probate Court are separate and distinct under Georgia law, Plaintiff must overcome the presumption that Defendant Franklin County "exerts or shares control over the fundamental aspects of the employment relationships" of the Probate Court.[82]

---

[76] *Id.*

[77] *Id.* at 1345 (emphasis in original).

[78] *Id.*

[79] Doc. 40 at 2.

[80] *Boswell v. Bramlett*, 274 Ga. 50, 51 (2001). *See also Hill v. Watkins*, 280 Ga. 278, 283 (2006) (Benham, J., dissenting).

[81] 1983 Ga. Const., Art. IX, Sec. I, Par. III.

[82] *Id.*

In weighing the plaintiff's evidence, the court must consider the totality of the circumstances, and must look to factors showing "indicia of control" such as 1) the authority to hire, transfer, promote, discipline or discharge; 2) the authority to establish work schedules or direct work assignments; and 3) the obligation to pay or the duty to train the charging party.[83]

First, where one entity has complete authority to hire, transfer, promote, discipline, or discharge employees without having to seek approval from any other entity, the plaintiff cannot overcome the presumption of distinctness.[84] Even consultation with officers of another entity before making employment decisions does not suffice to demonstrate the separate entity's control over such decisions, absent binding effect.[85] However, a separate entity's power to review such decisions constitutes some evidence against the presumption.[86] Moreover, where an employee is subject to an investigation or proceedings by a separate entity, "a sufficient degree of interrelationship between the respective entities" creates "at least a jury question" as to whether the entities were a single employer.[87]

---

[83] *See id.*

[84] *Laurie v. Ala. Court of Criminal Appeals*, 256 F.3d 1266, 1272 (11th Cir. 2001).

[85] *Martin v. Peach Cnty., Ga.*, No. 5:10-CV-236, 2011 WL 4830176, at *7 (M.D. Ga. Oct. 12, 2011) (finding that while Sheriff consulted with County Administrator "from time to time on personnel matters," County had no authority over employment decisions).

[86] *See Johnson v. Chilton Cnty. Comm.*, No. 2:08-cv-811, 2009 WL 2323846, at *3 (M.D. Ala. July 29, 2009). *But see Fender v. Clinch Cnty.*, No. 7:06-cv-108, 2008 WL 160642, at *3 (M.D. Ga. Jan. 15, 2008) (noting that "[t]he power to veto hiring decisions . . . is one step removed from the power to make the hiring decision itself").

[87] *Mack v. State of Ala. Dep. of Human Resources*, 201 F.Supp.2d 1196, 1202-03 (M.D. Ala. 2002).

Here, although Plaintiff concedes only the Probate Judge could hire or fire Probate Court employees, she asserts that Defendant Franklin County possessed a measure of control over these decisions. When Plaintiff's allegations against Defendant Fowler came to light, County Manager Morse launched an investigation into the incident and exercised his authority to place Plaintiff on paid leave for the duration of the investigation, demonstrating that the County held some control over Plaintiff's employment status.[88] Moreover, County Manager Morse had the authority to find Plaintiff another position within the County, and although he ultimately did not exercise that power, his authority to transfer Plaintiff indicates some County control over Probate Court employees.

Second, where it is the sole duty and obligation of one entity to establish work schedules and to oversee assignments, the presumption of distinctness is not overcome.[89] The plaintiff must provide evidence of some involvement by a separate entity in these decisions to rebut the presumption using this factor.[90]  In the present case, although Plaintiff has not provided evidence that Defendant Franklin County directed the work assignments of Probate Court employees, the Court finds that the County did exercise a degree of control over Probate Court employees' work schedules.

---

[88] *See Mack*, 201 F.Supp.2d at 1202-03 (finding that where the plaintiff was subject to an investigation by an outside entity, there was sufficient evidence of interrelationship to create a jury question).

[89] *Martin*, No. 5:10-cv-236, 2011 WL 4830176, at *7.

[90] *Id.*

Specifically, the County informed Defendant Fowler that Probate Court employees could not work overtime due to budgetary limitations, thus the Probate Court did not possess sole discretion in setting work schedules.

Third, regarding the obligation to pay or the duty to train employees, "[t]he source of a governmental entity's funding is a poor indication of whether it should be aggregated with another."[91] Consequently, the mere duty to pay another entity's employees' salaries through the budgeting of funds does not overcome the presumption.[92] Evidence that "indirectly bear[s] on control over employment, such as payroll and benefit administration . . . is not enough to demonstrate control" over another entity.[93] The same applies to other administrative aspects of employment.[94]

Plaintiff supplies evidence that although the Probate Judge sets the salaries for Probate Court staff, the Judge must justify those salaries to the County. As a result, the Probate Judge's power to set salaries was limited by the County's authority. Moreover, Probate Court employees' salaries were linked to the salaries of other County

---

[91] *Lyes*, 166 F.3d at 1346 n.10.

[92] *Lee v. Mobile Cnty. Comm.*, 954 F.Supp. 1540, 1546 (S.D. Ala. 1995) (holding that "[s]imply because an entity . . . is required under state law to pay the salaries of employees does not mean that such entity is the employer of those employees for purposes of liability under Title VII"). *See also Brownell v. Varnes*, No. 4:00CV318-WS, 2000 WL 33173552, at *2 (N.D. Fla. Dec. 19, 2000) (holding that the allegation that the County was "responsible for approving the Sheriff's budget" was insufficient to establish that the former constituted an employer).

[93] *Johnson*, No.2:08-cv-811, 2009 WL 2323846 at *3.

[94] *Robbins v. Chatham Cnty.*, 863 F.Supp.2d 1367, 1375 (S.D. Ga. 2012) (holding that facts "related to particular administrative aspects of [the plaintiff's] employment . . . are of no moment when assessing" control over the separate entity).

employees such that when County employees received a raise, Probate Court employees did as well, demonstrating some County control over Probate Court salaries.

Based on the factors outlined above, as well as the totality of the circumstances, the Court finds Plaintiff has raised sufficient evidence to establish a genuine issue of material fact as to whether the Probate Court and Defendant Franklin County may be aggregated as a single employer for Title VII purposes. Therefore, the Court finds there is a question of fact as to whether Defendant Franklin County was Plaintiff's employer.

However, even assuming that Defendant Franklin County was Plaintiff's employer under Title VII, for the reasons discussed below, Defendant Franklin County is entitled to summary judgment because Plaintiff raises no genuine issue of material fact as to her claims of hostile work environment based on sexual harassment and retaliation against Defendants.

### B.  Hostile Work Environment Claim

Plaintiff's Title VII hostile work environment claim against Defendant Franklin County is based on the same facts surrounding the alleged incident with Defendant Fowler.[95] For the same reasons already discussed as to why Plaintiff fails to make out a claim of hostile work environment based on sexual harassment under § 1983, Plaintiff's Title VII claim fails against Defendant Franklin County. Therefore, the Court finds

---

[95] *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citations omitted) ("[T]he analysis of … claims under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same.")

Plaintiff has failed to establish a hostile work environment claim under Title VII, and Defendant is entitled to judgment as a matter of law.

C. **Retaliation Claim**

Plaintiff also brings a retaliation claim against Defendant Franklin County under Title VII. Title VII makes it unlawful for an employer to retaliate against an employee for engaging in protected conduct.[96] To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) she established a causal link between the protected activity and the adverse action.[97] Title VII retaliation claims require that "[the] protected activity was a but-for cause of the alleged adverse action by the employer."[98]

Defendants argue that Plaintiff cannot make out a *prima facie* case as to the third element, a causal connection. To establish a causal connection, the plaintiff must show that the decision maker was aware of the protected conduct, and that the protected activity and adverse action were not wholly unrelated.[99] A plaintiff may show causation between the protected expression and an adverse action if they are in "close temporal

---

[96] *See* 42 U.S.C. § 2000e–3(a).

[97] *Raney v. Vinson Guard Serv.,* 120 F.3d 1192, 1196 (11th Cir. 1997); *see also Bryant v. Jones,* 575 F.3d 1281, 1307-08 (11th Cir. 2009).

[98] *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2534 (2013).

[99] *Kidd v. Mando Am. Corp.,* 731 F.3d 1196, 1211 (11th Cir. 2013).

proximity."[100] However, mere temporal proximity must be "very close."[101] Although a two-month gap may be sufficient to maintain a claim of temporal proximity alone,[102] a three-month gap is simply too long, without more, to establish causation.[103]

In the present case, Plaintiff complained about Defendant Fowler's actions on August 20, 2012, and on November 13, 2012, Defendant Eavenson told Plaintiff he would not consider her for a position in his chambers. However, Plaintiff continued to work as a clerk until December 31, 2012, the date of her official termination. Thus, there was a nearly three-month delay between Plaintiff's complaint and any claimed adverse action, and over four months between her complaint and her final termination. The Court finds that this time span alone is simply insufficient to establish a causal connection and make out the third element of Plaintiff's *prima facie* claim.

The Eleventh Circuit, albeit in unpublished opinions, has held that when a plaintiff cannot show temporal proximity because of a significant gap in time between the protected activity and the adverse employment action, she may still establish causation by offering "additional evidence to demonstrate a causal connection, such as a pattern of antagonism or that the adverse employment action was the 'first

---

[100] *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

[101] *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

[102] *See Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir.1999) (concluding that a causal nexus was established based on the supervisors' knowledge of an EEOC charge and the employee's termination seven weeks later).

[103] *Thomas*, 506 F.3d at 1364; *see also Higdon*, 393 F.3d 1211, 1221 (11th Cir. 2004) ("By itself, the three month period ... does not allow a reasonable inference of a causal relation between the protected expression and the adverse action.").

opportunity' to retaliate."[104] Here, Plaintiff presents no evidence of antagonism or retaliatory animus on the part of Defendants, but instead contends that she can make out a *prima facie* claim under a "first opportunity to retaliate" theory.

Plaintiff asserts that the Court should not look to Defendant Franklin County's actions in terminating Plaintiff to determine causation, even though, according to Plaintiff, it was Plaintiff's employer and had a level of control over the hiring and firing decisions. Plaintiff instead attempts to rely on Defendant Eavenson's actions to prove a "first opportunity" argument.

Plaintiff claims that when Defendant Eavenson told her that he would not hire her on November 13th, this was his first opportunity to retaliate, despite not having the authority to make employment decisions until January 1st when he officially took office. [105] Defendant Eavenson was elected in August to replace Defendant Fowler as Probate Judge. According to Plaintiff he told her she had a job in October, and then on November 13th, he made it clear to her that he was not going to hire her. However, Plaintiff also claims Defendant Eavenson did not have actual hiring authority until January of 2013, and it was only upon January 1st that he would have had the opportunity to "take action" against the Plaintiff.[106]

---

[104] *Jones v. Suburban, Inc.*, 577 Fed. App'x. 951, 953 (11th Cir. 2014).
[105] Pl. Sur-Reply, Doc. 43 at 3.
[106] *Id*.

The Court finds Plaintiff's first-opportunity argument convoluted and temporally illogical.[107] If Defendant Eavenson's hiring authority was not manifest until January 1st, then causation based on his "first opportunity" cannot be satisfied, because Plaintiff was actually terminated the day before, on December 31st. However, even assuming *arguendo* that the Court was to find Plaintiff established causation to prove her *prima facie* case, Plaintiff's claim would still fail because she cannot rebut Defendant's legitimate non-retaliatory reasons as pretext.

### 1. *Legitimate Non-Retaliatory Reasons*

Once a plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action."[108] The employer's burden of rebuttal is "exceedingly light."[109] If the employer meets its burden of production, in order to defeat summary judgment, the plaintiff must demonstrate a "genuine factual issue as to whether the defendant's proffered reason is a pretextual ruse to mask a retaliatory action."[110]

---

[107] Moreover, the Court notes that if Defendant Franklin County had a level of control over the hiring and firing decisions, then it also did not use its "first opportunity" to retaliate, which would have been the week after Plaintiff complained. Instead, Plaintiff was not actually terminated until Dec. 31st over four months after her complaint, and, as noted above, this is not close enough to show causation.

[108] *Gupta*, 212 F.3d at 590

[109] *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1495 (11th Cir. 1989).

[110] *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997).

Defendants present various non-retaliatory reasons as to why Defendant Eavenson did not hire Plaintiff. Defendant Eavenson knew Plaintiff previous to becoming a judge, and he claimed that he knew "finding positive reasons" to hire her was going to be "an issue."[111] Defendant Eavenson cites a series of situations that went into his determination not to hire Plaintiff: an incident where Plaintiff accused a person in the court of contempt and then asked Defendant Eavenson to arrest him; she was short with someone on the telephone; she appeared in court "heavily medicated" and her speech was "slurred"; there were complaints that deputies did not want to work court with her because she said inappropriate comments, such as telling them that if they showed up at her house at a certain time she would "be lying out in the yard naked in the sun"[112]; she did physical exercises in the office; in the public transcripts she put entries describing people as "jackleg" and "stupid."[113] Finally, when the Chief Clerk, Shirley Banks, avoided his question of whether to hire Plaintiff and would not recommend her for employment, Defendant Eavenson "made his mind up" not to hire Plaintiff.[114] The Court finds these reasons are ones "that might motivate a reasonable

---

[111] Eavenson Dep., Doc. 25-4 at 134.
[112] *Id*. at 161.
[113] *Id*. at 29.
[114] *Id*. at 157.

employer,"[115] and thus, Defendant has satisfied its "exceedingly light" burden of producing a legitimate, non-retaliatory reason for termination. [116]

### 2. *Pretext*

The burden now shifts to Plaintiff to establish pretext. In order to demonstrate pretext, a plaintiff "must demonstrate that the proffered reason was not the true reason for the employment decision."[117] If the employer offers more than one legitimate, non-discriminatory reason, the plaintiff must meet each of the proffered reasons "head on and rebut it."[118] Reasons are pretextual only if (1) the reasons were false and (2) retaliation was the real reason for the employment decision.[119] Moreover, summary judgment is proper where the defendant offers legitimate reasons, and the employee only offers temporal proximity.[120] Thus, Plaintiff must show that the legitimate reasons offered for taking the adverse action were in fact pretext for unlawful retaliation,[121] and that her protected activity was the "but-for" cause of the adverse action.[122]

---

[115] *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*).

[116] *See Vessels v. Atlanta Ind. School Syst.*, 408 F.3d 763, 769-70 (11th Cir. 2005) (employer's burden is exceedingly light and is satisfied as long as the employer articulates a clear and reasonable non-discriminatory basis for its actions).

[117] *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation marks omitted).

[118] *Chapman v. AI Transp.*, 229 F.3d at 1037.

[119] *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

[120] *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1247 (11th Cir. 2001) (affirming summary judgment for employer where legitimate reasons for the termination decision were offered by the defendant and employee presented virtually no evidence of discrimination, other than temporal proximity of the events).

[121] *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).

[122] *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1334 (11th Cir. 2013) (ADEA); *Nassar*, 133 S.Ct. at 2534.

In an attempt to establish pretext, Plaintiff claims Defendants have presented "shifting reasons" for terminating her. In particular, Plaintiff contends Defendant Eavenson's reasons are pretext because he was aware of the majority of his stated reasons previous to telling Plaintiff that her job was safe.[123] Additionally, Plaintiff claims that Defendant Eavenson never articulated his reasons for terminating Plaintiff for over two years.[124]

The Court recognizes that "an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext."[125] However, an employer is permitted to elaborate on its reasons for taking an employment action without raising the inference of pretext.[126] Moreover, an additional, but undisclosed, reason for an employment decision does not establish pretext in and of itself.[127]

---

[123] Pl. Sur-Reply, Doc. 43 at 5. Plaintiff also contends that some of the reasons articulated in Defendants' summary judgment brief were not told to Defendant Eavenson till after he terminated Plaintiff, such as Plaintiff giving lap dances to other employees and brining a gun to work. However, according to Defendant Eavenson's deposition, the reasons for his final decision were Plaintiff's reputation, as well as additional information he gathered before taking office. Eavenson Dep., Doc. 25-4 at 29,157,161.

[124] Pl. Resp. Br., Doc. 32 at 17.

[125] *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006); *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004); *Bechtel Const. Co. v. Sec't of Labor*, 50 F.3d 926, 935 (11th Cir. 1995).

[126] *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998) (suggesting that a more detailed explanation or an elaboration for a general reason is insufficient to establish pretext); *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 855 (8th Cir. 2005).

[127] *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir.1998) (citing *Zaben v. Air Prods. & Chem., Inc.*, 129 F.3d 1453, 1458–59 (11th Cir. 1998)).

Even taking the facts in the light most favorable to the non-moving party, Plaintiff has failed to show Defendant Eavenson harbored a retaliatory animus because of Plaintiff's complaint against Defendant Fowler. Defendant Eavenson never spoke to her about the incident with Fowler,[128] nor was Plaintiff the only clerk of Defendant Fowler's that was not extended an offer of employment by Defendant Eavenson despite being told that their job was safe.[129]

Plaintiff has also failed to show Defendant Eavenson's reasons shifted as to why he refused to hire her. It is undisputed that Defendant Eavenson knew about Plaintiff's complaint against Defendant Fowler when he told Plaintiff that her job was safe. However, it is clear from the record, and Plaintiff admits,[130] that even though Defendant Eavenson was aware of the majority of the reasons given for her termination before telling her she had a job, it was only after his assurance to Plaintiff that he found out about the public computer note Plaintiff wrote calling people in the probate court "jack leg" and "stupid,"[131] her exercising in the office, and Ms. Banks' refusal to recommend Plaintiff.[132] Indeed, Defendant Eavenson stated in his deposition that it was for all of these reasons, and in particular Ms. Banks unwillingness to recommend Plaintiff, that led him to make the final decision not to hire Plaintiff as a clerk in his chambers.

---

[128] Hall Dep. Doc. 25-3 at 123.

[129] Defendant Eavenson did not extend employment to Shirley Banks either. *See* Doc. 25-4 at 110, 151. *See also* Hall Dep., Doc. 25-3 at 115-116.

[130] Pl. Resp., Doc. 32 at 18.

[131] Eavenson Dep, Doc. 25-4, at 29.

[132] Pl.'s Resp. Brief., Doc. 32 at 18.

Furthermore, Defendant Eavenson had no reason to thoroughly articulate his reasons for terminating Plaintiff until he was asked to do so in light of this litigation.  Instead of presenting "shifting reasons", Plaintiff has merely shown that in light of this litigation Defendant Eavenson explained the reasoning for his final decision.[133]

Plaintiff simply fails to "rebut head on" Defendant Eavenson's legitimate non–retaliatory reasons. Moreover, because Plaintiff fails to rebut these legitimate reasons, most of which would have alone adequately justified Defendant Eavenson's unwillingness to hire her, the Court finds that no reasonable factfinder could conclude that her termination "would not have occurred" without her complaint against Defendant Fowler.[134] She therefore has failed to prove but-for causation.[135] Accordingly, the Court finds that Plaintiff has failed to establish her claim of retaliation, and Defendant Franklin County is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, Defendants' Motions for Summary Judgment [Doc. 25 and 27] are **GRANTED**.

---

[133] *See Standard*, 161 F.3d at 1332; *Tidwell*, 135 F.3d at 1428; *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733–34 (7th Cir. 2001) (finding no pretext where employer "simply supplemented its explanations in the context of EEOC charges and litigation; there has been no retraction of any of its reasons for failing to promote [plaintiff] nor are any of its reasons inconsistent or conflicting").

[134] *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 981 (11th Cir. 2014).

[135] *See Nassar*, 133 S.Ct. at 2525 ("It is ... textbook tort law that an action is not regarded as a cause of an event if the particular event would have occurred without it."); *see also Burrage v. United States*, 134 S.Ct. 881, 888 (2014) (discussing *Nassar's* but-for test, and explaining that but-for causation can be shown when two or more factors combine only "so long as the other factors alone would not have done so").

A district court has discretion to decline supplemental jurisdiction over a claim when it "has dismissed all claims over which it has original jurisdiction."[136] Factors to be taken into account include "the values of judicial economy, convenience, fairness, and comity."[137]  Courts are strongly encouraged to dismiss state-law claims when the federal claims have been resolved prior to trial.[138] In this case, because the Court has found against Plaintiff on her federal claims prior to trial, her state claims are **DISMISSED without prejudice**.[139]

     **SO ORDERED,** this 30th day of September, 2015.

                         S/  C. Ashley Royal
                         C. ASHLEY ROYAL
                         UNITED STATES DISTRICT JUDGE

---

[136] 28 U.S.C. § 1367(c)(3). *See Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1088-89 (11th Cir. 2004).

[137] *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988).

[138] *See id.* (concluding that "federal court[s] should decline the exercise of [supplemental] jurisdiction by dismissing the case without prejudice" when the federal law claims have been dismissed prior to trial).

[139] This dismissal will not prejudice Plaintiff, because the period of limitations for filing the state-law claims in state court is tolled "while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period," pursuant to 28 U.S.C. § 1367(d).